USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/7/2021_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID SMITH,

                    Plaintiff,

    -against-

WESTCHESTER COUNTY, et al.,

                    Defendants.

19-cv-03605 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

      Plaintiff David Smith, ("Plaintiff") commenced this *pro se* action on or about April 16, 2019, against Westchester County, Aramark Correctional Services LLC, Manual Mendoza (Aramark Food Service Director, Westchester County Department of Correction), and Joseph Spano (Commissioner, Westchester County Department of Correction) (together, "Defendants"). (ECF No. 2.) On September 16, 2020, Defendants filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 29.) Plaintiff did not oppose the motion. (ECF No. 31.) For the following reasons, the motion to dismiss is GRANTED. Dismissal of Plaintiff's claims against Defendants is without prejudice and with leave to amend and replead.

## BACKGROUND

      The following facts are taken from Plaintiff's Complaint, dated April 16, 2019 and are assumed true for the purposes of this motion. (ECF No. 2.)[1]

---

[1] Plaintiff's Complaint was originally filed jointly with two other plaintiffs—Kelechi Ogidi and Tasjawn White. (ECF No. 2 at 1.) As such, the Complaint contains allegations not only pertaining to Plaintiff, but also pertaining to the other two original plaintiffs as well. (*Id*. at 4.) However, the joint claims were severed by the Court pursuant to Federal Rule of Civil Procedure 21. (ECF No. 5.) Because Plaintiff is proceeding *pro se*, the Court

Plaintiff was detained at the Westchester County Jail ("WCJ"), presumably as a pretrial detainee,[2] between approximately June 27, 2018 and April 16, 2019. (*Id*. at 2, 4.) Over the span of his detainment, Plaintiff experienced a multitude of issues regarding the food served to him: (1) a prevalent taste of soap, allegedly stemming from the failure to properly rinse the serving dishes; (2) food which was intended to be served hot, was instead served cold; (3) water was not served with meals; (4) the juice served with meals came in containers covered in "black mold"; and (5) the meat had a sour taste and foul odor, alluding to the point that the meat was old and expired. (*Id*. at 4.) Plaintiff alleges to have received over sixty meals, each having at least one of the aforementioned issues. (*Id*.) Further, Plaintiff indicates that the water available in the cells was brown in color and had black, foreign particles floating in it, thereby making it undrinkable. (*Id*.) The Complaint alleges that dozens of other inmates had also complained about the same, or similar issues. (*Id*.)

Plaintiff alleges that in or around November 2018, he attempted to file a grievance with Sergeant West regarding the issues with the quality of the food. (*Id*.) Sergeant West did not accept Plaintiff's grievance and instead told him, "You can't grieve Aramark. You have to file a commissary complaint." (*Id*.) As such, Plaintiff alleges to have filed a commissary complaint, to which he never received a response. (*Id*.) Further, each of the severed plaintiffs' statements also allege that WCJ sergeants refused them the opportunity to file grievances regarding food-related issues as well. (*Id*.) On or around December 1, 2018, after attempting to file a grievance for food-related issues similar to those which Plaintiff detailed in his Complaint, Sergeant Scott-

---

considers facts from the Complaint that are generally applicable to Plaintiff's claims regardless of which section they appear in.

[2] Although the Complaint fails to explicitly indicate whether Plaintiff was a pretrial detainee, the Court liberally interprets the checked box for "pretrial detainee" in Plaintiff's Complaint (ECF No. 2 at 2) as an allegation that Plaintiff is in fact a pretrial detainee notwithstanding that the checked box could have applied to one of Plaintiff's original co-plaintiffs.

Price told the first severed plaintiff, "You can't file grievances." (*Id.*) Further, in July, 2018, after allegedly receiving over one hundred meals in similar conditions to those which Plaintiff described in his Complaint, the other severed plaintiff attempted to file a grievance with Sergeant McWilliams, who then took it and threw it in the garbage saying, "We're tired of these bullshit food grievances." (*Id.*) That severed plaintiff had never personally filed a food-related grievance before. (*Id.*) Subsequently, he tried to file another grievance with Sergeant West (the same sergeant which Plaintiff attempted to file his grievance with) but was again refused and told, "You're wasting your time." (*Id.*)

The Complaint, within the second severed plaintiff's statement, alleges that Defendants were aware of the issues regarding WCJ's food conditions, and specifically that Westchester County and Aramark failed to train, supervise, discipline, and oversee and their employees. (*Id.*) The Complaint further alleges that Manual Mendoza and Joseph Spano had meetings where they discussed the food served in WCJ, including inmates' complaints, and subsequently failed to take any action to remedy the issues regarding the conditions of WCJ's food. (*Id.*)

As a result of these food-related issues, Plaintiff alleges that he has suffered injuries such as nausea, vomiting, diarrhea, headaches, dehydration, and a feeling of fatigue and weakness. (*Id.* at 4-5.)

Plaintiff seeks $750,000 in compensatory damages, $750,000 in punitive damages, and nominal damages against all Defendants. (*Id.* at 5.)

## LEGAL STANDARD: MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss is proper unless the complaint "contain[s] sufficient factual matter, sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

Where a motion to dismiss is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "*not* bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678. (quoting *Twombly*, 550 U.S. at 555) (emphasis added).

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claim(s) "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where a claim is facially plausible—when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While it is not necessary for the complaint to assert "detailed factual allegations," it still must allege "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*.

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.*" Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotations and citation omitted). However, when dealing with a *pro se* plaintiff, the Court may

consider "materials *outside* the complaint to the extent that they are consistent with the [factual] allegations in the complaint." *Gayot v. Perez*, No. 16-CV-8871 (KMK), 2018 WL 6725331, at *4 (S.D.N.Y. Dec. 21, 2018) (emphasis added) (internal quotations, alterations, and citations omitted).

*Pro se* complaints are held to different, more relaxed standards as courts must construe *pro se* pleadings more liberally than they would for non-*pro se* pleadings. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Further, courts must interpret the *pro se* plaintiff's pleading "to raise the strongest arguments that [it] suggest[s]." *Harris v. City of New York.*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nonetheless, in order to be entitled to relief, a *pro se* plaintiff's complaint must contain sufficient factual allegations which would plausibly entitle them to relief. *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010). To that point, where an allegation lacks an essential, necessary element to the entitlement of relief, a court's "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

Although not explicitly stated, the Court interprets Plaintiff's Complaint to allege one condition of confinement claim, pursuant to 42 U.S.C. § 1983, in violation of the Fourteenth Amendment.[3] The Court interprets the claim under the Due Process Clause of the Fourteenth

---

[3] The Court does not interpret the denial of Plaintiff's ability to file a grievance with WCJ or its sergeant employees as a claim that would show a constitutional violation. It is well settled that "[p]rison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *see also Mimms v. Carr*, No. 09- CV-5740 (NGG) (LB), 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011), aff'd, 548 F. App'x 29 (2d Cir. 2013) ("It is well-established that prison grievance procedures do not create a due-process-protected liberty interest."); *Avent v. Doe*, No. 9:05-CV-1311 (FJS/GJD), 2008 WL 877176, at *8 (N.D.N.Y. Mar. 31, 2008) ("A violation of the inmate grievance procedures does not give rise to a claim under section 1983.").

Amendment (as opposed to the Cruel and Unusual Punishments Clause of the Eighth Amendment) because a "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment," *Darnell v. Pineiro*, 849 F3d 17, 29 (2d Cir. 2017), and as noted above, Plaintiff is viewed as pretrial detainee for the purposes of this motion.

Defendants argue that Plaintiff's claim against Defendants fails and should be dismissed because (1) Plaintiff's allegations are conclusory, rather than factual, and thus fail to meet the pleading standard required for *pro se* complaints, (2) Plaintiff does not plead a municipal custom or policy, which is required under *Monell* to sustain a Section 1983 claim against Westchester County and Aramark, (3) Plaintiff fails to plead personal involvement of each of the individually-named Defendants, and (4) Plaintiff fails to plead unconstitutional conditions of confinement. (ECF No. 29 at 5.) For the reasons that follow, the Court agrees.

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

To state a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, 2013

WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

I.     *Monell* **Liability**

For municipalities and officers acting in their official capacities, liability under Section 1983 may not be found on a *respondeat superior* theory solely because the municipality or officer employs the actor who commits the wrongdoing or violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 659, 691 (1978). In other words, a municipality may only be held liable under Section 1983 claims if it individually caused, or was at least involved in, the constitutional violation. *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).

The Second Circuit uses a two-prong approach in determining *Monell* liability for Section 1983 claims. *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted). First, the plaintiff must plead "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* (citation omitted). Second, the plaintiff must establish a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Hayes v. County of Sullivan*, 853 F.Supp.2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

To establish an official custom or policy, a plaintiff must allege one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*White v. Westchester County*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)). If a plaintiff alleges *Monell* liability for a municipality or official based on an unofficial policy or custom, then the practice, custom, or usage must be so widespread and persistent that it has the force of law. *Goode v. Westchester County*, No. 18-cv-2963 (NSR), 2019 WL 2250278, at *3 (S.D.N.Y. May 24, 2019). However, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)) (internal quotation marks omitted).

Alternatively, where municipal liability is based on a failure to train employees, the inadequate training must "reflect[ ] deliberate indifference to ... constitutional rights." *City of Canton*, 489 U.S. at 392. To allege deliberate indifference, a plaintiff must properly plead (1) "that a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

Defendants argue that Plaintiff's claims against Defendants should be dismissed not only for having mere "conclusory allegations," but also for failure to allege a municipal policy or custom, or to allege specific enough details to satisfy the requirements of a *Monell* liability claim for "failure to supervise or train" against Westchester County and Aramark. (ECF No. 29 at 5, 8-

11.) The Court agrees with Defendants. The Complaint does not explicitly contain an allegation of an official municipal policy or custom created by Defendants. Nor does Plaintiff have sufficient factual allegations to establish an *unofficial* custom as to Westchester County's and Aramark's failure to train, supervise, and discipline its employees, so widespread and persistent as to have the force of law.

A failure to train or supervise constitutes a policy or custom that is actionable under Section 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. Without any further factual allegations in support of his claims, Plaintiff's claim that Westchester County and Aramark were aware of the issues and did not take any corrective action, and that they failed to train supervise, and discipline their employees as such, is a legal conclusion that the Court cannot hold sufficient to state a *Monell* claim. *See Haslinger v. Westchester County*, No. 18-cv-5413 (NSR), 2020 WL 5504314, at *4 (S.D.N.Y. Sept. 9, 2020) (granting a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss partially because "[a]lthough Plaintiff summarily alleges that Defendants were aware of the food issues he identifies through prior lawsuits, grievances, verbal and written complaints, and daily meetings where grievances are discussed, Plaintiff does not provide any factual details about such lawsuits, grievances, and complaints").

As other courts in this District have observed, such lack of factual detail may prove fatal to a plaintiff's *Monell* claim. *See*, *e.g.*, *Mercedes v. Westchester County*, No. 18-CV-4087 (KMK), 2019 WL 1429566, at *4–5 (S.D.N.Y. Mar. 29, 2019) (dismissing a *Monell* claim against Aramark and Westchester County where plaintiff alleged being served unhygienic and

inedible food, but did not allege the existence of any policy, actions taken or decisions made by policymaking officials, systemic failures to train or supervise, or "factual indicia from which this Court could infer the existence of a policy or custom"); *But cf. Hall v. Westchester County.*, No. 18-cv-8114 (NSR), 2021 WL 795165 (S.D.N.Y. Mar. 1, 2021) (holding that the first prong of the *Monell* liability analysis had been met not only because there was a *stated, explicit* policy to not allow food-related grievances against Aramark *because* of the number of past food-related grievances filed which demonstrated an awareness of the issues, but also because a widespread and persistent, unofficial custom existed based on allegations including (1) Westchester County's and Aramark's meetings with supervisors, discussing the food-related complaints and lawsuits, and (2) the plaintiff's "detailed description of the pervasive food issues," alleging that his "meat was *always* undercooked…and his bread was *always*…moldy").

Here, there is no express policy stated in the Complaint. Further, the Complaint only alleges issues pertaining to three people, and does not specifically allege if, or how the issues were present for other inmates, or even for *every* meal. The Complaint *does* say however that "dozens of other [unidentified] inmates" had also complained, but again, no specific, factual allegations have been asserted to support the claim.

Accordingly, Plaintiff's claims against Westchester County, Aramark Services, LLC, and the individual defendants in their official capacities are dismissed based on a failure to assert sufficient facts to support a plausible *Monell* claim.

## II. Personal Involvement

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because [he or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013)

(affirming a district court's dismissal of claims against a prison warden where plaintiff did not allege the warden's personal involvement in, or awareness of, the health, safety, and communications issues raised by plaintiff). Because liability under the respondeat superior theory does not apply to claims filed under Section 1983, plaintiffs must allege a defendant's personal involvement in the alleged constitutional violation, specifically through the defendant's own individual actions. *Iqbal*, 556 U.S. at 676; *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016).

Previously, courts within the Second Circuit's jurisdiction have relied on the standard as set out in *Colon v. Coughlin*, which includes five categories of facts which, if properly asserted**,** may be sufficient to support a supervisory defendant's personal involvement and warrant the imposition of supervisory liability. 58 F.3d 865, 873 (2d Cir. 1995). *But see Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has ... engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*."). The Second Circuit has since stated that, "*Iqbal* holds that a plaintiff may not rely on a special test for supervisory liability. Rather, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Further, the Second Circuit, agreeing with the Fifth, Seventh, Eighth, Ninth, and Tenth Circuits, *id*. at 618 n.6, officially stated that, "[t]o hold a state official liable under § 1983, a plaintiff must plead…the elements of the underlying constitutional violation *directly against the official* without relying on a special test for supervisory liability." *Id*. at 620 (emphasis added). Accordingly, here, to hold a municipality or official liable under Section 1983, in the context of the Fourteenth Amendment, the standards for supervisory liability set out in *Colon* may not be

used, and Plaintiff must demonstrate, through factual allegations, that each individual Defendant meets *all* elements required for a Section 1983 conditions of confinement claim. Defendants argue that Plaintiff's claims against Defendants—here, Mendoza and Spano—in their individual capacities should be dismissed because "Plaintiff fails to offer any explanation as to Mendoza's or Spano's personal involvement other than the conclusory assertion that they participate[d] in meetings where food-related issues [were] discussed." (ECF No. 29 at 12-13.) As Plaintiff has *not* alleged that Mendoza's and Spano's conduct each individually met all elements required for a Section 1983 condition of confinement claim (discussed below), the Court agrees that Plaintiff's claims against them should be dismissed.[4]

## III.    Conditions of Confinement

The Constitution requires that prison officials "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Second Circuit has held that the Constitution "require[s] that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981)). A "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment," whereas an incarcerated inmate's claims arise

---

[4] Defendants, as a basis for their Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, proffer the *Colon* factors as a basis for establishing a defendant's liability through personal involvement of a constitutional violation. (ECF No. 29 at 11-12.) (citing *Colon*, 58 F.3d at 873). As previously discussed, following the Second Circuit's opinion in *Tangreti*, 983 F.3d at 615-20, the Court now rejects the *Colon* factors, and holds them to be an *insufficient* method of establishing personal involvement. However, as Plaintiff still has *not* alleged that defendants Mendoza and Spano have each individually met the elements required for a Section 1983 condition of confinement claim on their own, the Court still grants the motion to dismiss Plaintiff's claims against defendants Mendoza and Spano.

under "the Cruel and Unusual Punishments Clause of the Eighth Amendment." *Darnell*, 849

F.3d at 29. In either case, to set forth a successful Section 1983 claim for conditions of

confinement, a plaintiff must allege that an individual "acted with *deliberate indifference* to the

challenged conditions." *Sanders v. City of New York*, No. 16 Civ. 7426 (PGG), 2018 WL

3117508, at *6 (S.D.N.Y. June 25, 2018) (emphasis added).

The *deliberate indifference* test is a two-pronged test. The first prong—the "objective

prong"—is analyzed by the Court the same way under the Eighth or Fourteenth Amendment: A

plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable

risk of serious damage to his health." *Darnell*, 849 F.3d at 30. "There is no 'static test' to

determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must

be evaluated in light of contemporary standards of decency.'" *Id.* at 29 (quoting *Blissett v.

Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). In both constitutional instances, the second prong

states that a plaintiff must allege that the defendant-officer acted either intentionally, or "at least

with deliberate indifference to the challenged conditions." *Id.* However, the second prong, also

referred to as the "subjective," or "*mens rea*" prong, is analyzed *differently* by the Court

depending on whether the claim is brought under the Cruel and Unusual Punishment Clause of

the Eighth Amendment, or the Due Process Clause of the Fourteenth Amendment. *Id.* The term

"subjective prong" may be misleading though as "the Supreme Court has instructed that

'deliberate indifference' roughly means 'recklessness,' but 'recklessness' can be defined

subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable

person knew, or should have known)." *Id.* (quoting *Farmer*, 511 U.S. at 836–37). When

analyzed under the Eighth Amendment, deliberate indifference, and thus reckless, for conditions

of confinement claims is defined *subjectively. Id.* at 32 (citing *Farmer*, 511 U.S. at 837). But

when analyzed under the Fourteenth Amendment, deliberate indifference, and thus reckless, is defined *objectively*: "the *pretrial detainee* must… [allege] that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official *knew*, or *should have known*, that the condition posed an excessive risk to health or safety." *See Id*. at 30, 35 (holding that "the Due Process Clause can be violated [even] when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm") (emphasis added).

Other courts in this District have held that "mere 'knowledge and acquiescence'" to unconstitutional conduct, or mere failure to act on a complaint, without more, fails to state a claim under Section 1983. *Faulk v. N.Y.C. Dep't of Cor.*, No. 08- CV-1668(LGS), 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014) (quoting *Iqbal*, 556 U.S. at 677); *see also Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement."). Furthermore, dismissal is typically warranted where a plaintiff "fails to make any factual allegations" against individually named defendants, and instead "only generally alleges" violations by staff or employees. *See Hoffstead v. Aramark Corr. Servs., LLC*, No. 18 CV 2381 (VB), 2019 WL 1331634, at *3 (S.D.N.Y. Mar. 25, 2019) (dismissing claims against individual defendants where "Plaintiff fail[ed] to make any factual allegations against [the named defendants]" and "only generally allege[d] throughout his complaint that Aramark's staff and kitchen staff served him food to which he was allergic") (internal quotations and citation omitted). Accordingly, a defendant's high position or rank is not sufficient in and of itself to show that the defendant is, or should be aware of something—plaintiffs need more factual support showing *why* or *how* defendants are or should be aware of

something. *See Crispin v. Westchester County*, No. 18 CV 7561 (VB), 2019 WL 2419661, at *4 (S.D.N.Y. June 10, 2019) (holding that general allegations against defendants Mendoza, Spano, and others, stating that they are or should be aware of the food-related issues at WCJ based on their respective positions, "do not satisfy the mens rea prong" of the deliberate indifference test for Section 1983 claims) (emphasis omitted).

Defendants argue that Plaintiff fails to allege a sufficient constitutional violation because Plaintiff's claim does not satisfy either prong of the Section 1983 test: (1) "Plaintiff fails to plead unconstitutional conditions of confinement… because he fails to allege that he sustained serious harm," and (2) "[Plaintiff] fails to allege deliberate indifference on the part of…Defendants." (ECF No. 29 at 5.) While the Court does *not* agree with Defendants' analysis and argument as to the first prong, the Court *does* ultimately agree that Plaintiff fails to plead a valid constitutional violation, as he does not sufficiently allege Defendants' deliberate indifference.

Defendants use the Cruel and Unusual Punishments Clause of the Eighth Amendment as a basis for their argument that Plaintiff's conditions of confinement do not rise to necessary level of a constitutional violation. (*Id.*) The Court disagrees with this analysis. As previously discussed, the first, "objective" prong is analyzed the same way under the Eighth or Fourteenth Amendment: there is no test to be used, and the conditions must simply impose a serious risk to a plaintiff's health. The "cruel and unusual punishments" standard found within the Eighth Amendment, and proffered by Defendants, is not applicable in this case. As Plaintiff is a pretrial detainee, his claims are evaluated under the Due Process Clause of the Fourteenth Amendment.

Construing Plaintiff's Complaint liberally, the Court finds that Plaintiff has adequately pled conditions which pose a serious risk to his health, and thus, satisfy the first prong. Plaintiff indicates that on over sixty occasions, he had been served meat which had a sour taste and foul

odor (alluding to the point that the served meat was expired), juice in containers covered in mold, food which tasted like soap due to unsanitary conditions, and that the food, which would otherwise be served hot, was served cold. Further, Plaintiff states that he never received water with his meals, and that the water offered to him in his cell was brown in color, had black particles in it, and thus was undrinkable. The Court agrees with Defendants, as well as the Seventh, Eighth, Eleventh, and D.C. Circuits, to the extent that food merely served cold or in an unpleasing manner is too frivolous of a claim to constitute a constitutional violation. (ECF No. 29 at 14-15;) *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994); *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992); *Hamm v. DeKalb County*, 774 F. 2d 1567, 1575 (11th Cir. 1985); *Levi v. District of Columbia*, Civ. A. No. 92-2653, 1993 WL 626311, at *2 (D.C. Cir. Feb. 24, 1993). Following this Court's prior precedent, the Court holds the other alleged food-related issues to be "obvious health hazards." *See Hall*, 2021 WL 795165, at *5 (holding that "regularly being served undercooked and bloody meat…and juice containers with mold around them…are obvious health hazards").

However, as to Plaintiff's claim of undrinkable water in his cell, while courts in this District have held that water which "could not be used for drinking or bathing without causing extreme discomfort" may rise to the necessary level of objectively, serious enough to "raise the prospect of a constitutional violation," *Bellezza v. Fischer*, No. 05 Civ. 98(DLC), 2006 WL 3019760, at *4 (S.D.N.Y. Oct. 24, 2006), Plaintiff has not plead sufficiently specific facts, such as tests or reports as to the contamination level of the water, or injuries specifically stemming from the alleged unsafe water, to show that the water was *truly* unsafe to drink. Further, Plaintiff does not allege any facts showing that he actually drank the water in his cell. As such, Plaintiff has not sufficiently plead a causal link between the alleged unsafe drinking water and his

injuries. *See Bonano v. Doe*, 628 Fed.Appx. 25, 28 (2d Cir. 2015) (holding that because the plaintiff did not actually drink the allegedly unsafe water, and because reports establishing that the water was safe to drink were provided, the plaintiff "failed to establish a causal link between the water" and his injuries, and thus, did not satisfy the objective prong) (citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996)).

Nonetheless, Plaintiff has adequately pled food-related issue and serious injuries as a result of the stated food-related issues, including nausea, vomiting, and diarrhea.[5] Accordingly, Plaintiff has satisfied the first, objective prong.

As to the second prong however, Plaintiff fails to sufficiently plead that the food-related issues and his subsequent injuries resulted from the Defendants' intent or deliberate indifference. As discussed in the ***Monell*** and **Personal Involvement** analyses above, the Complaint does not explicitly allege a policy created by the Defendants which caused the food-related issues. Further, the Complaint does nothing more than state a legal conclusion that Defendants, because of their elevated positions and alleged knowledge of the food-related issues, either intentionally caused, or were deliberately indifferent to, the food-related issues. However, as previously noted, "mere 'knowledge and acquiescence'" to unconstitutional conduct, or mere failure to act on a complaint, without more, is not enough to state a claim under Section 1983. *Faulk*, 2014 WL 239708 at *10 (quoting *Iqbal*, 556 U.S. at 677). Thus, while Plaintiff may have plausibly plead that Defendants were aware of, or at least should have been aware of the alleged conditions, without more, Plaintiff has failed to plead that Defendants either intentionally or "recklessly failed to act with reasonable care to mitigate the risk that the conditions posed." *Strange v.*

---

[5] The Court does *not* include Plaintiff's stated headaches as a sufficiently serious injury. *See Sledge v. Bernstein,* No. 11 CIV. 7450 PKC HBP, 2012 WL 4761582, at *5 (S.D.N.Y. Aug. 2, 2012) ("courts in this district have held that terrible and extreme headaches and swelling do not satisfy the objective component")

*Westchester Cnty. Dep't of Corr.*, 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018).

Accordingly, Plaintiff has not met the required elements for a Section 1983 claim and does not

sufficiently plead a valid constitutional violation under the Due Process Clause of the Fourteenth

Amendment.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and Plaintiff's

claim against Defendants is dismissed without prejudice. Federal Rule of Civil Procedure

15(a)(2) dictates that courts "should freely give leave [to amend a complaint] when justice so

requires." Because Plaintiff's Complaint may rise to the level of a valid constitutional violation if

more specific, factual allegations were to be provided, Plaintiff is granted leave to file an

amended Complaint and replead, addressing the deficiencies identified herein upon this Court's

Opinion. Because the Amended Complaint will completely replace, not supplement, his

previously-filed Complaint, any facts or claims that Plaintiff wishes to retain must be included in

or attached to the Amended Complaint.

The Amended Complaint shall be filed on or before August 6, 2021. A blank *pro se*

Amended Complaint form is attached hereto.  If Plaintiff fails to file an Amended Complaint by

August 6, 2021 and he cannot show good cause to excuse such a failure, the claims dismissed

without prejudice by this Order will be deemed dismissed with prejudice, and the case will be

closed. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 28,

mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF, and show service

on the docket.

Dated: July 7, 2021
White Plains, NY

SO ORDERED:

_____

NELSON S. ROMÁN
United States District Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)


# COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.  LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.  PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name               Middle Initial              Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                          State                    Zip Code

## III.  PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☐  Convicted and sentenced prisoner

☐  Other: _____

# IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

Defendant 2:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

Defendant 3:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

Defendant 4:

First Name                    Last Name                    Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                    Zip Code

## V.     STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

_____

## VII.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____            _____
Dated                                                        Plaintiff's Signature

_____
First Name                              Middle Initial            Last Name

_____
Prison Address

_____
County, City                                    State                     Zip Code

Date on which I am delivering this complaint to prison authorities for mailing:  _____